Good morning, Your Honor. If it may please the Court, I am James L. Rosenberg, representing the appellant. This is not a complicated case, compared to some of the others you've already heard. This is quite possibly the simplest. I view one issue. Credibility has been determined there by the judge. The issue becomes, in reality, how much is needed to reach the level of persecution. If you allow me to do a very brief summary, and I don't think I'll use my whole ten minutes, I have a young lady who comes from a family that was part of the diplomatic corps under the Demircian administration. That would have been Karen Demircian, who was the last communist leader in Armenia. She's multilingual, speaks French. She was in France as a representative of an organization that deals with exchange students. Now, it's not a government organization. It's a private organization. She's interviewed in France, and she makes statements to the effect that the money that's being sent for purposes of the exchange students is not being properly used. And that's as far as it goes. It impugns corruption, but it doesn't come right out and say it. She goes back home, and several months later, she's called to task on it in Armenia by their internal security forces. She's interviewed. She explains the statement. Several months later, I think the judge says it's about six months later, they start interviewing her by the police department. It's some special unit. I think they call it Department 6. She's interviewed six times. The first five times, while there's no testimony to the effect, she's questioned repeatedly. And toward the last time, she's asked to sign papers, some of which relate to alleged criminal conduct by her supervisor, and there's some discussion about missing funds. The amount, as I remember, is about $200 or $300. She refuses to sign the papers. She is, at the last hearing, there's contact. I can't say she was beaten. The judge said they pulled her hair, to the point that she was almost at tears. And when she leaves the last time, she's basically told, stay around, we're not done, and that's it. The real problem comes up. She comes to the United States. She already had a visa. She came to the United States. She's filed for asylum. She's basically saying, I'm in a threat of injury. I'm not going to say threat of death, because I didn't read that anywhere. Primarily because of the impugned statement of corruption of the government. Now, whether the government's corrupt or not isn't even a factor. And I'm not going to start prophesying whether or suggesting that it is or isn't. The point is the statement was made, and it does appear to suggest that. The problem is what was done to her. Is it very little? Is it enough? Is it more needed? The question we have, and I'm not trying to understate it, but there really isn't a whole lot there. We have a young woman whose parents apparently are at one time politically active previously. We're told they're now in Russia. I think that's in the judge's decision at one point that they left for Russia. We're not told why, and I'm not going to speculate why. I don't think that's appropriate. She is active in this organization. I don't even know if it's volunteer work. I'll presume it might be a paid job. She did lose her job. The one point I forgot to mention, one day after her very first interview, she's asked to explain what happened, and then there's almost a six-month gap before there's real police involvement. Cumulatively, it starts to make you suspicious that she's being punished for having said something the government doesn't like. I agree with you, but let me just explain what my concern is, and maybe you can address it. It seems to me from this record, you could find that this is persecution, but you could also find it isn't. If you're in that posture, we're kind of in the posture of reviewing it, is there substantial evidence in the record? We have these cases like Novoluku, which seems to be awfully close to this case, where when you take that plus firing from your job usually isn't enough, being pushed, in this case let's say pushed and hair pulled, if kicked and beaten or kicked and hitting isn't enough, I'm not saying what happened to her was nice, and I'm not saying it was appropriate, but why doesn't the circumstance that occurred here fall within our precedent that says it doesn't compel a finding? The problem area we have, and I agree with your question, because I've asked it also, why isn't there more? They said they'd get back to her, didn't they? They said they would. They basically said don't leave, we're not done. And the innuendo that I gathered out of it is they were conducting an investigation, I don't know if it was real or one that was being cooked. The biggest problem we run into, and it's a problem relating to the conditions in the country of Armenia as well as many of the other former Soviet nations, is the protections that we're accustomed to, as a matter of fact that we almost take for granted, don't exist there. In the United States, if I were to say the Bush administration and certain operations was less than honest, in some communities I'd be hailed as a hero. In Armenia, if I said that about the president of Armenia, I would probably be shot. And yet Armenia purports to be a democracy, they have a constitution that says they're a democracy, but their operation appears to be a little less than democratic. Now the question is how far would a young lady, what does she have to put up with? I know from the record she went to the police department, I think it was internal affairs, six times in a short period of time. The number itself leaves me rather suspicious. That's really the concern is that the standard isn't for past persecution, is one that you have to pinpoint specific incidents of persecution. Regrettably, it's not one of those things where if there might be persecution but it hasn't happened yet, you get to apply for it. It's kind of an odd system. From the perspective I'm on, my side of the fence, the problem is I'm on the edge, I'm not over the board yet, and I am pushing this court, and I'll openly admit I am pushing the court to move the board behind me so I'm over it. And I might add this is not the first time I've been before this court arguing on light facts, but I take the case with the first suggestion or statement I can make is she's called back six times. The last time there's actually something which I would conclude would be at least some degree of violence, pulling of the hair. The other five times I can only suggest because I can't find it in the record is that the questionings appear to have gotten at least the same if not more aggressive. The question does is she have to wait until they hit her in the face or can she leave after she's afraid they're going to hit her in the face and doesn't want to come to the United States with a broken nose? And that's really where it lies. I would propose to the court that in England, and I use that specifically as an example because I view it as a democracy, this is not enough. In Armenia where they're violating human rights, I think this might be enough. I don't think a woman has to wait until she's physically abused. And I'm not talking about in a sexual manner. I'm talking about being hit or injured. Now, you may think, well, it would be much better if she were. I'd have a stronger case. And I agree. But I don't think that's the standard. I think when the threat is there and it's building and the person reaches the point where they realize if I go back or they call me back, they're either going to put me in jail or something bad is going to happen because I've said something that may be honest, maybe it wasn't honest. I don't know if money was being taken from this organization or not. But I know she's made the statement. She made it in France. It was rebroadcasted apparently in Armenia. And she tried to explain it when she was first called to explain it, about six months prior to the police involvement. And that's all I have. As to whether it's appropriate or not, this is why I'm grateful you people wear the black robes and I just have to come in a dark suit, because I don't like splitting the babies. And at that point, I'll sit back unless there are questions. Roberts. May it please the Court, Robin Blyar for the Attorney General. In this case, the immigration judge determined that based on all of the things that had happened to this petitioner in Armenia, she had not shown past persecution. As the judge pointed out, the Court's case law indicates that being interrogated for short periods of time, being kicked during some of those interrogations have been found to be not past persecution. And I believe we cite to some of those cases in our brief. Although she lost her job, there's nothing to indicate that she could not find another job in Armenia or was unemployable. There's no evidence to support the fear that she would be harmed if she returned to Armenia. The evidence of record does not compel a different finding, and we'd ask the Court to affirm the immigration judge's decision. If there are no questions. It's a bad place now, isn't it, for reading the country reports? Well, Your Honor, the country reports do indicate that there are problems there, but there's nothing specifically that mentions her or her specific instance. I mean, supposedly she was sought after because she was a member of this nonprofit group, but there's nothing to indicate that other people in her same position have the same problems or similar problems. No, but it's a rough place. And, you know, they've called her in six times, and she's fired, harassed, had her hair pulled. Well, Your Honor, it's merely speculation that she was fired because of her statement. I mean, she indicated herself that everything is secret and that she can't find out who And then she was told that they'd be back. A little bit of a threat, isn't it? It may be a threat, Your Honor, but it's not enough to be past persecution to warrant a finding that she has a well-founded fear if she goes back. Well, she'd be a brave woman if she went back. Well, Your Honor, I mean, that may be the case. There's no indication that anything, she was never beaten or anything else during these interrogations. Her hair was pulled, but that was the extent of any harm to her, which I believe under this Court's case law would indicate that she has not been persecuted in the past and would not warrant a finding that she has a well-founded fear of returning. Her parents are in Russia? Is that correct? Yes, I believe so, in Moscow. Okay, thanks. You're welcome. The matter is submitted.
judges: Bright, Pregerson, McKeown